IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIE LEE HAVMMERI, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:22-cv-00594-E-BT |
| | § | |
| METHODIST HEALTH SYSTEM OF | § | |
| DALLAS, | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Willie Lee HavMmeri filed this *pro se* employment discrimination and retaliation suit against his former employer Defendant Methodist Health System of Dallas[1] (Methodist) on March 14, 2022. Compl. (ECF No. 3). Before the Court is Methodist's Motion to Dismiss (ECF No. 33). For the reasons stated below, the Court recommends granting Methodist's motion to dismiss.

## Background

HavMmeri worked for Methodist as a Non-Invasive Technician in the Cardiology Department. *See* More Definite Statement (hereinafter "Am. Compl.") (ECF No. 24). He allegedly experienced a "toxic" work environment and had poor relationships with his coworkers and supervisors—all of whom were female. Am. Compl. 2. The situation became unbearable after an incident on March 10, 2020, when HavMmeri arrived at his workstation to find a coworker seated in his cubicle.

---

[1] Methodist states that HavMmeri incorrectly names "Methodist Health Systems" as the defendant in his complaint. Mot. Dismiss 1 (ECF No. 33).

Am. Compl. 1. According to HavMmeri, this employee was his supervisor's close personal friend who was hired "to serve in an unofficial manner" as his supervisor's "personal assistant." Am. Compl. 2. HavMmeri requested to use the workstation to clock in for his shift but the coworker "refused." Am. Compl. 1–2. "After repeated pleas . . . [HavMmeri] was cursed out by the [coworker], belittled and disrespected." Am. Compl. 2.

On March 17, HavMmeri emailed his supervisor with the subject line: "formal complaint regarding work environment." Am. Compl., Ex. 1. In his complaint, HavMmeri detailed the March 10 incident and accused his coworker—the supervisor's "personal assistant"—of mistreating him by telling HavMmeri "[he] must have woke up on the wrong side of the bed that morning and that [he] was acting like a 'female' during the conversation." Am. Compl., Ex. 1. She also "mocked [HavMmeri's] delivery . . . speaking in a nasally effeminate way when recalling [the] conversation." Am. Compl., Ex. 1. HavMmeri admitted, however, that he found the coworker's imitation "comical, as well as disingenuous," and he relayed that he and the coworker ultimately "agree[d] to drop the issue." Am. Compl., Ex. 1. HavMmeri then explained "my issue is not actually with the employee," rather that the coworker is a "utility/miscellaneous tech" who "operate[s] freely in our department with no clearly defined role," works as a third person in a two-person job, and when roles are not clearly defined "tempers flare." Am. Compl., Ex. 1.

HavMmeri also described in his email other incidents of alleged mistreatment, including one that occurred "a few years ago" involving a different coworker cursing at him and "wagging her finger in [his] face" because he did not complete a task for her. Am. Compl., Ex. 1. He further stated yet another coworker used racial slurs on an unspecified date: "[She] once called me a 'Lazy Nigga' for no longer wanting to do a stack of EKGs she could not get to before her lunch break—every day." Am. Compl., Ex. 1. And, he complained the supervisor herself threatened to fire HavMmeri for "bragging to the staff about going home early." Am. Compl., Ex. 1. HavMmeri concluded the email by listing several rhetorical questions conveying that, as a Black man, he does not have the same privilege as "many of the women in the department" who can "fl[y] off the handle:"

> Ask yourself what would happen if I stood up to a female coworker 100 pounds lighter than me, wagging my finger and shouting profanities? Ask yourself what would happen if instead of me getting called a 'lazy nigga' I called the coworker in question and 'old cripple'? Ask yourself what would be the narrative if I matched profanity laced, emotional dialogue with a female coworker? Imagine if I didn't apologize to my boss for HER threatening to fire me? In any of those scenarios would I still have a job??? Would not security be escorting me out of the building? If I engaged in such behavior would it not be deemed 'toxic'?

[2] Am. Compl., Ex. 1.

---

[2] HavMmeri similarly posed rhetorical questions to the Court in a letter objecting to adverse rulings on miscellaneous motions and expressing frustration over the perceived delay in adjudicating his claims. Ltr. (ECF No. 64). For example, HavMmeri invited the Court to "imagine herself . . . Stripped of title and status[;] Ignorant to Medical Procedures[;] Entering the Hospital with a fractured femur[;]" and HavMmeri playing the role of the hospital administrator who apparently delighted in denying the Court's requests for a doctor and pleas to schedule

After sending the email, HavMmeri requested to speak with his Human Resources (HR) representative and his supervisor's boss. Am. Compl. 2. Instead, the supervisor allegedly "tried to get [HavMmeri] to drop his complaint, wanting it to be handled without involving HR nor [the supervisor's] immediate supervisor." Mot. Dismiss, Ex. 1 (hereinafter "EEOC Charge") (ECF No. 33-1). On March 24, "fearing that [his] grievance had not been submitted to HR at all," HavMmeri went to HR directly. EEOC Charge 2. There HavMmeri spoke with his HR representative, at which time he learned that there was no grievance on file. EEOC Charge 2. HavMmeri then informed his HR representative about the March 10th incident with his coworker and that he was afraid he would lose his job because of the "grievance." EEOC Charge 2.

On March 29, allegedly without HavMmeri's knowledge, Methodist started investigating HavMmeri for "manipulation of financial documents" (timecards) and "stealing time"—that is, for leaving his duty station during his shift. Am. Compl. 6 & Ex. 1. On April 7, HavMmeri met with the Lead Investigator and HavMmeri's HR Representative; his request to meet with his supervisor's boss was "denied." Am. Compl. 6. At this meeting, he "explained the workplace violence [he] experienced on March 10, 2020 and informed [the Lead Investigator] that it was a long and storied history of similar circumstances in [his] immediate environment." Am. Compl. 6. The Lead Investigator informed HavMmeri that she would "meet

---

surgery: "[i]f your leg falls off, please hop over to the nurses station and give them an update on your condition." Ltr. 3.

with the parties involved, investigate [his] claims of 3 workers working in a 2-person work space, and wrap up her investigation." Am. Compl. 6. HavMmeri sent a follow-up email, subject line "Workplace/Gender Discrimination," "with further details into [HavMmeri's] grievance because, while [the Lead Investigator] was extremely polite during our sit down, she was quite dismissive and wanted to focus solely on the March 7th [sic] 2020 instance of workplace violence and ignore the [supervisor's] involvement in the circumstances that created the unfortunate confrontation." Am. Compl. 8.

On April 10, HavMmeri returned to HR under the impression that the meeting pertained to the investigation into his grievance. Am. Compl. 8. Instead, HavMmeri learned that he "was the subject of a covert investigation" for "stealing time." Am. Compl. 8. Although HavMmeri gave allegedly "irrefutable evidence" that he was not "stealing time"—he was fired that same day.[3] Am. Compl. 8.

After April 10, HavMmeri filed for unemployment, which was initially denied because of HavMmeri's reported misconduct (i.e., leaving his duty station during his shift). Am. Compl., Ex. 6. HavMmeri, however, successfully appealed to

---

[3] HavMmeri's "proof" is a picture of himself at his home that he posted on his social media account when he was supposed to be at work. HavMmeri explains the picture was taken earlier—when he scheduled to be off work—and merely posted while he was on duty. Am. Compl., Ex. 1. HavMmeri also admits he "frequented" the "onsite in-hospital gym" during his work hours. Am. Compl., Ex. 1. But, he explains, that habit did not constitute "stealing time" because he went during "designated break time" or at the beginning or end of his shift; he always took his pager and cell phone with him; he never missed a procedure; and "everyone knew" about his trips to the gym and no one had ever warned not to go to the gym during work. Am. Compl., Ex. 1.

the Texas Workforce Commission Appeal Tribunal. Am. Compl., Ex. 6. The Tribunal held that "[g]iven the remoteness of the policy violations, the timing of the investigation, and the lack of evidence and testimony regarding more recent policy violations prompting [HavMmeri's] discharge, [Methodist] has not established by a preponderance of evidence that the claimant was discharged for the reasons that amount to misconduct connected with the work." Am. Compl., Ex. 6. And "[t]he investigation into whether the claimant frequented areas outside of his designated work area only arose after he sent an email expressing his concerns about his supervisor and coworkers thus it is more probable than not that [HavMmeri] was discharged for reasons not specified by the employer." Am. Compl., Ex. 6.

On October 8, HavMmeri filed a Charge of Discrimination[4] with the EEOC and the Texas Workforce Commission (TWC). *See* EEOC Charge ("I expressly state that I want this filed with both the EEOC and the State or Local Agency."). Therein, he accused Methodist of discrimination based on race, sex, and retaliation. EEOC Charge ("I believe I was treated unfairly. I was discriminated against and subjected to a hostile work environment because I am an African American male, and I was terminated in a clear-cut case of retaliation. . . . I have been discriminated against because of race, sex (being male) and subjected to retaliatory, harassing,

---

[4] The Court notes that the name used on the EEOC Charge and Fax Cover Sheet was "Willie Lee Harris." *See* Mot. Dismiss, Ex. 1. According to HavMmeri he legally changed his name from "Wille Lee Harris" to "Willie Lee HavMmeri" while he was employed at Methodist. Mot. Misc. Relief, Ex. 2 (ECF No. 63-2).

intimidating, hostile work environment contrary to the requirements of Title VII of the Civil Rights Act of 1964 as amended."). The EEOC issued a Right to Sue Letter in December 2021. Resp. 6 (ECF No. 34). HavMmeri then filed this lawsuit and, later, a document labelled "More Definite Statement" (ECF No. 24), which HavMmeri intends to be his Amended Complaint. *See* Am. Compl. *Re-filed with Changed Heading* (ECF No. 46). In the Amended Complaint, HavMmeri alleges that his supervisor's decision to hire her friend as her personal assistant, which resulted in three individuals having to work at the 2-person workstation, constitutes gender discrimination because:

> I, being the only male in my department, was not allowed to receive [] additional hours with no defined role and, at the time of my termination, I worked at 3 different Methodist Hospitals simultaneously to get my allotted full-time hours.
>
> Female employees were allowed to pick up extra hours as a "personal assistant" to the Director or even help the Department Secretary file paperwork after their shifts ended to get additional hours. I, being the only male in my immediate department, was not privy to such additional hours.

Am. Compl. 2. HavMmeri, therefore, asserts that Methodist discriminated against him on the basis of his sex or gender and retaliated against him in violation of state and federal law, including § 161.134 of the Texas Health & Safety Code, the Texas Commission on Human Rights Act (TCHRA), Tex. Lab. Code Ann. § 21.001, *et seq.*, the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1) & § 2000e-3(a). *See* Am. Compl. 4–5; Mot. Dismiss 4.

On November 10, Methodist filed a Motion to Dismiss (ECF No. 33) pursuant to Federal Rule of Civil Procedure 41(b) and 12(b)(6). HavMmeri filed a Response[5] (ECR No. 34), and Methodist filed a Reply (ECF No. 45). Thus, the Motion is ripe for consideration.

## Rule 41(b)

Methodist initially argues HavMmeri's case should be dismissed pursuant to Rule 41(b). Rule 41(b) states: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Methodist argues that HavMmeri failed to file an amended complaint by October 31, 2022, as required by the Court's October 7 Order. Mot. Dismiss 3; *see* Order 2 ("The Court ORDERS HavMmeri to file a verified (or signed) amended complaint by October 31, 2022.") (ECF No. 23).

---

[5] Without leave of Court, HavMmeri filed multiple responses to Methodist Motion. *See* ECF Nos. 34, 44, 47, 48, 53, 57, 59. The Court liberally construes these filing Sur-Replies which do not comport with the Northern District of Texas's Local Rules. *See* N.D. Tex. Civ. R. 7.1 (limiting briefing in motion practice to the motion, response, and reply); N.D. Tex. Civ. R. 56.7 ("Except for the motions, responses, replies, briefs, and appendixes required by these rules, a party may not, without the permission of the presiding judge, file supplemental pleadings, briefs, authorities, or evidence"); *see also Off. Brands, Inc. v. Roc Nation Sports, LLC*, 2017 WL 345616, at *3 (N.D. Tex. Jan. 23, 2017) (Boyle, J.) (applying Local Rule 56.7 to motion to dismiss); *Barrack v. UNUM Am. Life Ins.*, 409 F. Supp. 2d 782, 785 (N.D. Tex. 2006) (same). Although not required to do so, the Court reviewed all of HavMmeri's unauthorized Sur-Replies and finds that the arguments contained therein are largely repetitive of arguments he made in his original response or in other motions for miscellaneous relief otherwise disposed of by the Court. In any event, the additional filings do not change any recommendation in this report, and thus, the Court declines to address them in detail.

However, as Methodist recognizes, the Court must liberally construe HavMmeri's complaint with all possible deference due a *pro se* litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (pro se pleadings are "to be liberally construed," and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."); *Cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice"). Here, in response to the Court's October 7 Order, HavMmeri filed a pleading titled "More Definite Statement" (ECF No. 24). Although the pleading is not titled "Amended Complaint" it contains the necessary components to be liberally construed as a complaint. *Hand v. Berlusconi*, 2022 WL 16556811, at *1 (S.D. Tex. Oct. 31, 2022) ("[T]he label or title a [plaintiff] gives to pro se pleadings is not controlling; rather, courts look at the content of the pleading (first citing *United States v. Santora*, 711 F.2d 41, 42 n.1 (5th Cir. 1983); then citing *Andrews v. United States*, 373 U.S. 334, 338 (1963)); *see also Erickson*, 551 U.S. at 93 ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"). And HavMmeri signed the document—as required by the Court's order. Further, as evidenced by the subsequent filing—HavMmeri intended the "More Definite Statement" to serve as his amended complaint. *See* Amended Complaint *Re-filed with Changed Heading* ("Same Document as Doc. 24, only with new and improved Heading") (ECF No. 46). Therefore, the Court should reject Methodist's argument that the case be dismissed pursuant to Rule 41(b).

## Rule 12(b)(6)

## Legal Standard

When deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). However, when deciding a Rule 12(b)(6) motion, a court may not look beyond the pleadings. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions

10

can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id.* at 678 (citing *Twombly*, 550 U.S. at 557).

## Analysis

Methodist moves to dismiss all of HavMmeri's claims under the Texas Health & Safety Code, the TCHRA, the FLSA, and Title VII. The Court addresses Methodist's arguments in turn.

1. HavMmeri's claim under the Texas Health & Safety Code is untimely.

In his Amended Complaint, HavMmeri appears to invoke Section 161.134 of the Texas Health & Safety Code. Methodist argues any claim HavMmeri could bring under that statute is untimely. Although Methodist's failure-to-timely-file argument is an affirmative defense, a defendant may move for dismissal under Rule 12(b)(6) if the facts giving rise to this defense "appear[ ] on the face of the complaint." *Hall v. Hodgkins*, 305 F. App'x 224, 227–28 (5th Cir. 2008) (per curiam) ("If, based on the facts pleaded and judicially noticed, a successful affirmative defense appears, then dismissal under Rule 12(b)(6) is proper."); *see also Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 253–54 (5th Cir. 2021) (holding that a court may grant a motion to dismiss based on limitations when it is evident from the pleadings that the action is time-barred); *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) ("A statute of limitations may

support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like.").

Section 161.134 of the Texas Health & Safety Code prohibits "[a] hospital, mental health facility, or treatment facility" from "suspend[ing] or terminat[ing] the employment of or discipline or otherwise discriminat[ing] against an employee for reporting to the employee's supervisor, an administrator of the facility, a state regulatory agency, or a law enforcement agency a violation of law." Tex. Health & Safety Code § 161.134(a). A plaintiff bringing claims under this statute has the burden of proof, though a rebuttable presumption of causation exists if the adverse employment action occurred "before the 60th day after the date on which the plaintiff made a report in good faith." *Id.* § 161.134(f). But a plaintiff must bring his claims "before the 180th day after the date the alleged violation occurred or was discovered by the employee through the use of reasonable diligence." *Id.* § 161.134(h).

As Methodist points out, HavMmeri did not file his lawsuit until March 14, 2022—*more than 700 days* after Methodist fired him on April 10, 2020. Mot. Dismiss 5. HavMmeri argues that Methodist is ignoring that he filed his EEOC charge on October 8, 2020. Resp. 4. But the filing of a charge with the EEOC does not toll the limitations period for filing a claim under the Texas Health & Safety Code. *See generally Vasquez-Duran v. Driscoll Children's Hosp.*, 2020 WL 7329815 (S.D. Tex. Nov. 12, 2020), *aff'd*, 2021 WL 3775350 (5th Cir. Aug. 25, 2021)

(applying the date of filing the complaint with the district court instead of the date the charge was filed with the EEOC). Therefore, the Court should dismiss HavMmeri's claim under the Texas Health & Safety Code as untimely because he did not file his lawsuit within the applicable limitations period.

2. HavMmeri's claim under the TCHRA is barred for failure to timely exhaust administrative remedies.

Similarly, Methodist argues that HavMmeri failed to timely exhaust his administrative remedies under the TCHRA. To exhaust their administrative remedies under the TCHRA, plaintiffs are required to file a charge of discrimination with the TWC or the EEOC no later than 180 days after the alleged unlawful act occurred. Tex. Lab. Code § 21.202(a). The Fifth Circuit has recently clarified that this deadline, "although mandatory, is not jurisdictional." *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 553 (5th Cir. 2020).

In Texas, which provides a state administrative mechanism to address claims of employment discrimination, a Title VII plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the conduct alleged. *See* 42 U.S.C. § 2000e-5(e)(1); *Griffin v. City of Dallas*, 26 F.3d 610, 612–13 (5th Cir. 1994). And a complaint under the TCHRA "must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred." Tex. Lab. Code § 21.202(a). Under the Worksharing Agreement between the EEOC and the TWC, a complaint filed with the EEOC, and forwarded by the EEOC to the TWC, satisfies the requirements of the TCHRA. *See Vielma v. Eureka Co.*, 218 F.3d

458, 461 (5th Cir. 2000); *Price v. Phila. Am. Life Ins.*, 934 S.W.2d 771, 773–74 (Tex. App. 1996, no writ). But "filing a charge with the EEOC out of [Tex. Lab. Code § 21.202(a)'s 180-day] time period does not expand a plaintiff's time for bringing a [TCHRA] claim in federal court." *Wright v. Transp. Commc'n Union/IAM*, 2020 WL 7061874, at *4 (S.D. Tex. Nov. 5, 2020), *rec. adopted*, 2020 WL 7060213 (S.D. Tex. Dec. 1, 2020); *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 586 n.65 (5th Cir. 2020) (explaining that plaintiff's TCHRA claims are barred if his charge is filed with the EEOC more than 180 days after the unlawful conduct occurred).

Here, HavMmeri claims he was fired on April 10, 2020—after he complained about his coworkers' behavior and Methodist's staffing practices in an email to his supervisor and subsequently in a meeting with his HR representative. *See* Am. Compl. 6; EEOC Charge. 3. Thus, he was required to file a charge with the TWC or the EEOC no later than October 7, 2020. But HavMmeri did not submit his charge to the EEOC until October 8, 2020. Mot. Dismiss, Ex. 1, pg. 1 (Fax Cover Sheet). Therefore, unless equitable tolling applies—his claim is barred. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("[F]iling a timely charge of discrimination with the EEOC is . . . a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling.").

Equitable tolling applies to a plaintiff's deadline for filing an administrative charge of discrimination only in extraordinary circumstances, such as "where the parties have a pending case in the wrong forum, where plaintiff is unaware of the facts as a result of defendant's purposeful concealment, and where EEOC misleads

plaintiff about the claim." *Deleon v. Gen. Insulation, Inc.*, 575 F. App'x 292, 293 (5th Cir. 2014) (citing *Granger v. Aaron's, Inc.*, 636 F.3d 708, 712 (5th Cir. 2011)). HavMmeri's case does not involve any of the circumstances that justify equitable tolling. The parties did not have a pending suit in another forum, Methodist did not conceal facts, and neither the EEOC nor the TWC misled HavMmeri. Thus, HavMmeri's claim under the TCHRA is barred for failure to timely exhaust administrative requirements.

HavMmeri argues that Federal Rule of Civil Procedure 6 should excuse his one day-delay because "all government buildings were closed to the public including the EEOC Dallas Branch Office" due to the Covid-19 Pandemic. Resp. 5; *see* Fed. R. Civ. Pro 6(a)(3) ("Unless the court orders otherwise, if the clerk's office is inaccessible on the last day for filing under Rule 6(a)(1), then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday."). HavMmeri claims that because the EEOC office was closed, "[he] had to send in the original filing by mail on September 28th 2020 . . . but [w]hen the item was still not yet received nor processed by the allotted date of October 7th 2020, [he] called the EEOC national number and was given a fax number, where [he] was told to submit the item again via fax." Resp. 4. HavMmeri's arguments are unavailing.

First, the Fifth Circuit has held that "[a] discrimination charge is filed for the purposes of Title VII on the date that EEOC *receives* the charge, not on the date that the charge is mailed." *Deleon*, 575 F. App'x at 293 (holding the delay in mailing

caused by a hurricane and attorney neglect did not excuse the late filing) (citing *Taylor v. Gen. Tel. Co.*, 759 F.2d 437, 442 (5th Cir. 1985) ("[T]his Court concludes that [Plaintiff] had not filed her charge with the EEOC when she deposited it in the mail on December 9, 1981. It was not filed until it was received by the EEOC on the 181st day after the alleged act of discrimination; therefore, her filing was not timely."); *Kirkland v. Big Lots Store, Inc.*, 547 F. App'x. 570, 573 (5th Cir. 2013) ("A claim is time barred if it is not filed within these limits. Mailing is not filing for the purposes of Title VII. A claim is considered filed when it is *received* by the EEOC or the state agency responsible for the administration of complaints of employment discrimination") (citations omitted). Therefore, even though the EEOC charge was mailed before the 180-day deadline—the EEOC did not receive the complaint until the 181st day. Second, Rule 6 applies to the Clerk of the Court not all government agencies. And, even if Rule 6 is applicable—HavMmeri knew October 7 was his deadline to file, yet he waited until that day to check the status of the charge he mailed and then waited until the following day to send it to the EEOC via fax.

The Court should therefore grant Methodist's motion and dismiss HavMmeri's claim under the TCHRA.

3. HavMmeri fails to state a cognizable claim for relief under the FLSA.

Methodist next asserts that HavMmeri's Amended Complaint fails to plead facts supporting his cause of action for retaliation in violation of the FLSA. Mot. Dismiss 5. Specifically, Methodist contends that the facts do not establish that he

16

engaged in a protected activity under the FLSA or that he was terminated as a result of engaging in that activity. Mot. Dismiss 5. Although HavMmeri filed numerous responses to Methodist's motion, none of his filings responded to Methodist's arguments regarding his failure to state a claim under the FLSA. Instead, HavMmeri argued the Court should reconsider his motions for miscellaneous relief.

In the Fifth Circuit, "[w]hen a plaintiff fails to defend a claim in response to a motion to dismiss . . . , the claim is deemed abandoned." *See Arias v. Wells Fargo Bank, N.A.*, 2019 WL 2770160, at *2 (N.D. Tex. July 2, 2019) (Lindsay, J.) (citing *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006)); *see also Scales v. Slater*, 181 F.3d 703, 708 n.5 (5th Cir. 1999) (reasoning that the plaintiff abandoned her claim by failing to contest defendant's arguments for dismissal of that claim); *Spraggins v. Caliber Home Loans, Inc.*, 2020 WL 8366645, at *3 (N.D. Tex. Dec. 31, 2020) (Rutherford, J.), *rec. adopted*, 2021 WL 311869 (N.D. Tex. Jan. 29, 2021); *Peña v. PHH Mortg. Corp.*, 2022 WL 398399, at *2 (N.D. Tex. Jan. 24, 2022) (Rutherford, J.), *rec. adopted*, 2022 WL 394759 (N.D. Tex. Feb. 9, 2022). But even if HavMmeri did not abandon his FLSA claim, he failed to allege any facts in his Amended Complaint to show that he engaged in a protected activity under the FLSA.

The FLSA prohibits an employer from "discharg[ing] or in any other manner discriminat[ing] against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding *under or related*

to this chapter[.]" 29 U.S.C. § 215(a)(3) (emphasis added). To state a claim under this anti-retaliation provision, a plaintiff must demonstrate: "(1) participation in protected activity *under the FLSA*; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *See Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 624 (5th Cir. 2008) (emphasis added). The Fifth Circuit has adopted the majority rule which allows "an informal, internal complaint to constitute protected activity under Section 215(a)(3)." *Hagan*, 529 F.3d at 625. However, when adopting the "informal complaint" rule, the Fifth Circuit acknowledged that there were necessary limitations and that "not all abstract grumblings or vague expressions of discontent are actionable as complaints." *Id.* at 626. "The employee's alleged complaint must concern a violation of law and be framed in terms of the possible illegality of the action which the employer has taken." *Benge v. Highgate Holdings*, 2010 WL 2680113, at *2 (N.D. Tex. July 2, 2010) (Boyle, J.) (citations omitted). Further, in making the complaint, the employee must be stepping outside of his job duties in representing the employer. *Hagan*, 529 F.3d at 625.

Here, HavMmeri failed to allege any facts in his Amended Complaint to show that he engaged in a protected activity *under the FLSA*. None of HavMmeri's pre-termination complaints concern any alleged violation of the wage and hour provisions of the FLSA. Rather, HavMmeri complained that there were three people working in a two-person job, which occasionally resulted in "tempers flaring." He also complained of unprofessional behavior by his coworkers,

18

including teasing and the occasional use of racial slurs against him, as well as favoritism by his supervisor. Upon reading the email HavMmeri wrote to his supervisor—which was attached to his amended complaint—it is clear HavMmeri did not frame his complaint in terms of participation in protected activity under the FLSA. Therefore, the Court should dismiss HavMmeri's claim under the FLSA.

4. <u>HavMmeri fails to state a cognizable claim for relief for Gender or Race Discrimination under Title VII.</u>

Methodist also argues that HavMmeri fails to state a claim for discrimination under Title VII, which prohibits employers from "fail[ing] or refus[ing] to hire [any individual,] . . . discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *42 U.S.C. § 2000e-2(a)(1)*. At the motion to dismiss stage, "a plaintiff need not submit evidence to establish the prima facie case for discrimination," but he "must plead sufficient facts on all of the ultimate elements of the claim to make [his] case plausible." *Davis v. Tex. Health & Hum. Servs. Comm'n*, 761 F. App'x 451, 454 (5th Cir. 2019) (per curiam) (citing *Chhim v. Univ. of Tex.*, 836 F.3d 467, 470 (5th Cir. 2016) (per curiam)). To state a claim for discrimination under Title VII, a plaintiff must plead that he "(1) is a member of a protected class; (2) was qualified for the position he held; (3) was subject to an adverse employment action; and (4) was treated less favorably than others similarly situated outside of his protected class." *Alkhawaldeh v. Dow Chem. Co.*,

851 F.3d 422, 426 (5th Cir. 2017) (citing *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004)).

In the context of a discrimination claim, courts construe the phrase "adverse employment decision" strictly. As the Fifth Circuit recently explained, "[a]n adverse employment action is a judicially-coined term referring to an employment decision that affects the terms and conditions of employment. We have consistently held that an adverse employment action is an ultimate employment decision, such as hiring, granting leave, discharging, promoting, or compensating." *Price v. Wheeler*, 834 F. App'x 849, 855 (5th Cir. 2020) (cleaned up); *see also Thompson v. Microsoft Corp.*, 2 F.4th 460, 470 (5th Cir. 2021) ("Adverse employment decisions are ultimate employment decisions such as hiring, granting leave, discharging, promoting . . . compensating, or demoting." (cleaned up)). An employment decision that "does not affect job duties, compensation, or benefits" is not an adverse employment decision for purposes of stating a discrimination claim. *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 282 (5th Cir. 2004). "[A] mere inconvenience or an alteration of job responsibilities will not suffice." *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014) (cleaned up).

Here, Methodist does not dispute that HavMmeri alleges he is a member of a protected class, that he was qualified for his position, and that he was terminated—which constitutes an adverse employment action. However, Methodist argues that HavMmeri "does not allege . . . that Methodist's decision to separate him from employment was discriminatory rather than retaliatory in

nature. That is, [HavMmeri] does not say 'I was fired because I am a man.' He says, at best, 'I was fired because I complained.'" Mot. Dismiss 9.

Not only does HavMmeri fail to offer any facts that support his claim that he was fired because he is a man or because he is Black, but he also unequivocally argues he was fired because he complained. Regardless of what this complaint was about, the reason proffered by HavMmeri for his termination is that he complained—not that he is a man nor that he is Black. Accordingly, HavMmeri's Title VII discrimination claim should be dismissed. *See Hornsby v. Conoco, Inc.*, 777 F.2d 243, 246–47 (5th Cir. 1985). (dismissing plaintiff's gender discrimination claims "because she failed to offer any evidence other than her subjective belief . . . that she was terminated because of her sex."; *Raj v. La. State Uni.*, 714 F.3d 322, 331 (5th Cir. 2013) (affirming Rule 12(b)(6) dismissal where plaintiff "did not allege any facts, direct or circumstantial, that would suggest [defendant]'s actions were based on [plaintiff]'s race or national origin or that [defendant] treated similarly situated employees of other races or national origin more favorably").

Furthermore, the other conduct of which HavMmeri complains does not constitute an ultimate employment action for purposes of a discrimination claim. That his co-workers were rude to him and attacked his masculinity or called him names—on the morning of March 10 or on some other unspecified date—is simply not actionable. Title VII is not "a general civility code for the American workplace." *E.E.O.C. v. Boh Bros. Const. Co., L.L.C.*, 731 F.3d 444, 460 (5th Cir. 2013) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998).

HavMmeri also states that he was not allowed to "receive additional hours with no defined role" but female employees were allowed to pick up extra hours as a "personal assistant" to the Director or even help the Department Secretary file paperwork after their shifts ended to get additional hours. He allegedly had to work at three different Methodist Hospitals "simultaneously" to get his "allotted full-time hours." Am. Compl. 2. Importantly, however, HavMmeri does not allege that his work assignment—or the denial of work in "undefined role"—affected his compensation. He does not allege that he was denied full-time work or that he was paid less than female employees. Rather, he alleges that he had to perform more difficult or less-desirable duties than his female coworkers. But "[u]ndesirable work assignments are not adverse employment actions." *See Southard v. Texas Bd. of Crim. Just.,* 114 F.3d 539, 555 (5th Cir. 1997); *see also Ellis v. Compass Grp. USA, Inc.,* 426 F. App'x 292, 296 (5th Cir. 2011) ("Imposing a higher workload than that given to other employees is not an adverse employment action under Title VII.").

The Court should dismiss HavMmeri's claim for race and gender discrimination under Title VII.

5. <u>HavMmeri fails to state a cognizable claim for relief for Retaliation under Title VII.</u>

Finally, with respect to HavMmeri's retaliation claim, Title VII's antiretaliation provision prohibits an employer from discriminating against any employee "because he has opposed any practice made an unlawful employment

practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

"To state a claim for retaliation in violation of Title VII, a plaintiff must allege that (1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *Leal v. McHugh*, 731 F.3d 405, 416–17 (5th Cir. 2013) (internal quotation marks and citation omitted). Though "a plaintiff need not make out a prima facie case of [retaliation] in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim," the prima-facie standard "has some relevance at the motion-to-dismiss stage," because in order to sufficiently state a Title VII-retaliation claim, "a plaintiff must 'plead sufficient facts on all of the ultimate elements' to make [his] cause plausible." *Jenkins v. La. Workforce Comm'n*, 713 F. App'x 242, 244, 245 (5th Cir. 2017) (per curiam) (quoting *Raj*, 714 F.3d at 331) (citing *Chhim*, 836 F.3d at 470–71).

Here, Methodist argues that HavMmeri did not engage in a protected activity under Title VII. Mot. Dismiss 7. "An employee has engaged in activity protected by Title VII if [he] has either (1) 'opposed any practice made an unlawful employment practice' *by Title VII* or (2) 'made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' *under Title VII*." *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (emphasis added).

HavMmeri alleges his protected activity was filing a grievance or "formal complaint" with his supervisor on March 17, 2020. *See* Am. Compl. 5 ("[B]y sending my Director an email on March 17th 2020 detailing a long history of harassment, discrimination, threats and workplace violence, I believe I presented a strong case for Wrongful Termination due to retaliation and discrimination."). However, HavMmeri mischaracterizes the March 17th email. Although he was complaining to his supervisor—this email is devoid of any mention of sex or race discrimination, and instead focuses on the presence of a third person in a two-person cubicle and his supervisor's personal relationship with and preference for the third worker in the workspace. The subsequent conversations HavMmeri had with HR also focuses on the number of people in the workspace and general incivility. *See Jackson v. Dall. Cty. Juvenile Prob. Dep't*, 2007 WL 2187250, at \*10 (N.D. Tex. July 30, 2007) (finding that memos that alluded to harassment that did not contain details regarding any factor to which Title VII is applicable were not protected activities). HavMmeri mentions for the first time in his EEOC Charge that he was fired because he is a man. Every time before this charge was filed—HavMmeri states that he was fired because he complained about the number of people working in the cubicle.

Therefore, the Court should dismiss his retaliation claim as well.

## Opportunity to Amend

HavMmeri's claims should be dismissed with prejudice without an opportunity to replead because any amendment would be futile. The Court

recognizes that the Fifth Circuit encourages trial courts to give *pro se* plaintiffs, like HavMmeri, several opportunities to state a claim upon which relief can be granted. *See Scott v. Byrnes*, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008) (Fitzwater, C.J.); *Sims v. Tester*, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001) (Fitzwater, J.). However, a court should deny leave to submit futile amendments that are "insufficient to state a claim," *see Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable."); *see also Arkansas v. Wilmington Tr. N.A.*, 2020 WL 1249570, at *5 (N.D. Tex. Mar. 16, 2020) (Lindsay, J.) (citing *Reliance Ins. v. La. Land & Expl. Co.*, 110 F.3d 253, 258 (5th Cir. 1997) (noting "judges have the power to control their dockets by refusing to give ineffective litigants a second chance to develop their case" (citing *Turnage v. Gen. Elec. Co.*, 953 F.2d 206, 208–09 (5th Cir. 1992))).

HavMmeri was given an opportunity to amend his complaint after the Court and Methodist pointed out the deficiencies. HavMmeri's response to the Magistrate Judge's questionnaire was considered as a part of his pleadings. HavMmeri took it upon himself to file numerous motions, letters, and proposed orders outlining his allegations. And he filed several responses to Methodist's Motion to Dismiss. Although the Court was not required to consider everything

filed by HavMmeri for the disposition of this Motion, the Court meticulously reviewed all 200 pages filed by HavMmeri.

HavMmeri has pleaded his best case and any further amendments to HavMmeri's claims would be futile. HavMmeri's state law claims are barred. And HavMmeri would be unable to state a cognizable claim for relief under FLSA or Title VII because he cannot change the events that led to his termination. HavMmeri did not submit a complaint under FLSA, he cannot allege that he was fired because of his race or gender, nor can he claim that his complaint to his supervisor about the number of people in his workspace and the March 10 incident was a protected activity. Therefore, any amendment would be futile.

## Conclusion

The Court should GRANT Methodist's Motion to Dismiss. Further, because any amendment would be futile, HavMmeri's claims should be dismissed with prejudice.

Signed: June 16, 2023.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

26

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).